UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:23-CR-380 |
| ) | |
| SONNY SAGGAR, M.D., and ) | |
| RENITA BARRINGER, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT SAGGAR'S MOTION SEEKING PERMISSION TO TRAVEL TO ENGLAND TO SEE HIS 93 YEAR OLD MOTHER**

Dr. Saggar respectfully requests permission to travel to England to be able to visit his aging mother. Dr. Saggar is well-aware that this is an unusual request. However, as discussed below, this case has several unique aspects to it.

First, Defendant was indicted on July 26, 2023. He was arrested and arraigned the next day. While a large volume of discovery has been produced, discovery production from the Government has not yet been completed, and the Government recently informed defense counsel that discovery will likely not be completed until the end of December, 2023. In other words, Dr. Saggar is being asked to patiently wait a half a year while being saddled with all the constraints of being on bond with no more than a finding of probable cause. Dr. Saggar's ability to proceed to trial and prove his innocence is being greatly delayed. The delays in discovery production also appear to be unjustified. For instance, on Monday, October 23, 2023, defense counsel received four different items, copies of two thumb drives and two CDs, all seized pursuant to the search warrant executed the day of the Defendants' arrest, July 27, 2023 – in other words, the Government has had these items for four months. Similarly, the Government obtained billing records from Jeff Donaldson

(referenced below) and still has not turned those over to Defendants. Whatever justification may exist for the delay in producing discovery, the delay is unfairly impacting Dr. Saggar.

Second, Defendants have a pending motion to dismiss based on the court's lack of jurisdiction. In other words, there is pending a legal argument that the indictment is in fact a nullity while he is being saddled with all the constraints of being on bond. Yet, the Government has filed pleadings opposing Defendants' motion to expedite a hearing on that motion.

Third, Dr. Saggar's mother is still alive at 93 years of age. However, statistically, she may not have that much longer to live. Dr. Saggar is very close with his mother and had been routinely traveling to visit her every few months prior to his arrest. However, his home is here in St. Louis and so are two of his three children (the oldest is away in college in England.)

Fourth, one of the key foundational allegations within the Indictment is critically wrong, thus greatly diminishing the breadth of any issue of wrongdoing in this case. Specifically, in Paragraph 2 of the Indictment, the grand jury alleges that the co-defendant, Ms. Barringer, was the office manager of SLGH, and "[a]s office manager of SLGH, Barringer's responsibilities included . . .billing." Then in Paragraph 35 and 36, the grand jury again claimed, "Barringer submitted all SLGH claims billed to [Medicaid and Medicare]."

In the Count I conspiracy, the Indictment alleges that Defendants conspired "to make false and fraudulent representations to Medicare and Medicaid regarding healthcare services provided at SLGH in order to make money and profit," Para 26, and that Defendants "caused Medicare to be billed for services . . as if they were provided by Dr. Saggar, when in fact those services were provided by APs." Then, in Counts 2 through 9, each alleges a false billing and having reincorporated previous paragraphs including 2, 35, and 36, thereby alleging the bills were submitted by Barringer. In other words, the entire Indictment revolves around false billings.

But, the Government got one fact terribly wrong. For all relevant times in the Indictment, Ms. Barringer had no responsibility for submitting bills to Medicare or Medicaid, or to anyone else for that matter. Rather, SLGH had long ago engaged an outside billing service to handle all of its billing, whether to governmental agencies or private insurance companies.

The Government missed the most critical fact related to any claim of false billings, i.e., who was the biller. Had the Government pursued this very critical fact, it would have easily discovered that the outside billing service, an owner-operator entity run by Jeff Donaldson, simply misunderstood the proper method of billing APs and Dr. Ali. As Mr. Donaldson has acknowledged to Dr. Saggar's counsel, Mr. Donaldson, without any bad intent, used an incorrect methodology to create the billings for work done by APs and Dr. Ali. We understand the Government has now become aware of these facts.

Mr. Donaldson was, and still is, a very conscientious billing provider who each day reviewed the electronic medical notes prepared by all the medical providers at SLGH. Those electronic medical records always indicated which provider saw the patient and provided the services (whether that be Saggar, Ali, or any of the APs). Without going into unneeded detail, Mr. Donaldson knew who the actual provider was for every bill which was submitted. However, he mistakenly believed the APs and Dr. Ali were allowed to be billed under Dr. Saggar's NPI. That decision was not made in consultation with anyone, but rather was arrived at based on his understanding of the Medicare and Medicaid regulations.

Regrettably, no federal agent or attorneys ever talked to Mr. Donaldson, Dr. Saggar or Ms. Barringer prior to obtaining its unannounced Indictment. Had such an inquiry been made, the Government could have learned that its belief that Ms. Barringer was submitting the billings for SLGH was simply wrong.

Defendants believe that the Government will readily acknowledge this flaw in the Indictment. If that is not the case, Defendants will submit supporting affidavits.

Wherefore, because for unexplained reasons discovery production is taking such an extended period of time, because of Mrs. Saggar's age, and because the case against Dr. Saggar is not what it appeared to be when presented to the grand jury, Defendant submits such is reasonable justification to permit him to travel to England for a short visit with his mother.

Dr. Saggar is willing to do such travel under any conditions the Court deems appropriate, including his sister's willingness to put up property in St. Louis (which she bought for over $1,000,000 and is unincumbered) to ensure his timely return.

Dated: October 25, 2023                  Respectfully submitted,

**DOWD BENNETT LLP**

By: */s/ James G. Martin*
James G. Martin  #33586 MO
James B. Martin  #70219 MO
7676 Forsyth Blvd., Suite 1900
St. Louis, MO  63105
314/889-7300 (Telephone)
314/863-2111 (Facsimile)
jmartin@dowdbennett.com

*Attorneys for Defendant Sonny Saggar, M.D.*

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that on October 25, 2023, a copy of the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system on all counsel of record.

                                                                   */s/James G. Martin*