UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 4:23-CR-00380-SRC-PLC |
| | ) | |
| v. | ) | |
| | ) | |
| SONNY SAGGAR, M.D., and | ) | |
| RENITA BARRINGER, | ) | |
| | ) | |
| Defendants. | ) | |

**UNITED STATES OF AMERICA'S RESPONSE TO DEFENDANTS' MOTION
TO DISMISS INDICTMENT BASED ON THE COURT'S LACK OF JURISDICTION**

COMES NOW the United States of America, by and through its attorneys, Sayler A. Fleming, United States Attorney for the Eastern District of Missouri, and Amy E. Sestric and Cort A. VanOstran, Assistant United States Attorneys for said District, and responds to Defendants' Motion to Dismiss Indictment Based on the Court's Lack of Jurisdiction (Doc. 49):

**I.     INTRODUCTION**

In their Motion to Dismiss, Defendants ask this Court to do what no other federal court has done: dismiss an indictment because the grand jury applied the well-established "probable cause" standard.  Despite making such an extraordinary request, Defendants do not articulate for the Court exactly what standard they believe the grand jury should have instead applied, except that it should have been a "much higher standard" that is "more demanding than probable cause."  They also do not direct the Court to any binding legal authority that supports their request.  This, of course, is because there is none.

Regardless of how some courts might have instructed grand juries on a few occasions, the Supreme Court has long recognized only one standard for federal grand jury indictments—

probable cause. The Supreme Court has never demanded a higher standard and, until it does so, probable cause is and will continue to be the standard applied by federal grand juries. The grand jury properly applied that standard here and found that it was met by returning the Indictment. There is thus no merit to Defendants' argument that the Indictment is invalid. Accordingly, Defendants' Motion to Dismiss should be denied.

## II.   ARGUMENT

Grand jury indictments are "constitutionally mandated for the institution of federal criminal prosecutions for capital or other serious crimes[.]" *Branzburg v. Hayes*, 408 U.S. 665, 687 (1972). The Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury[.]" U.S. Const. amend. V. While neither the Fifth Amendment nor any other constitutional provision specifies the standard of proof that governs federal grand jury indictments, the Supreme Court has announced it as being probable cause.

Nearly a century ago, the Supreme Court held that "the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer." *Ex parte United States*, 287 U.S. 241, 250 (1932); *accord Gerstein v. Pugh*, 420 U.S. 103, 118 n.19 (1975) ("[T]he Court has held that an indictment, 'fair upon its face,' and returned by a 'properly constituted grand jury,' conclusively determines the existence of probable cause and requires issuance of an arrest warrant without further inquiry." (quoting *Ex parte United States*, 287 U.S. at 250)). Since then, the Supreme Court has repeatedly reaffirmed the probable cause standard for federal grand jury indictments. *See, e.g.*, *Kaley v. United States*, 571 U.S. 320, 328 (2014) ("This Court has often recognized the grand jury's singular role in finding the probable cause necessary to initiate a prosecution for a

2

serious crime."). Unless and until the Supreme Court overrules these prior decisions, all other federal courts are bound to continue recognizing the validity of the grand jury's probable cause standard. *Kisor v. Wilkie*, 139 S. Ct. 2400, 2422 (2019) ("In a constitutional case, only we can correct our error."). The law therefore requires the Court to decline Defendants' invitation to commit reversible error by "going against" controlling Supreme Court precedent. *See Kohlbeck v. Wyndham Vacation Resorts, Inc.*, 7 F.4th 729, 734 (8th Cir. 2021) (explaining that the Eighth Circuit is bound to follow Supreme Court decisions on an issue until the Supreme Court overrules itself).

To be sure, the Supreme Court did not create the probable cause standard from whole cloth. The Supreme Court has recognized that "[t]he grand jury is an English institution, brought to this country by the early colonists and incorporated in the Constitution by the Founders." *Costello v. United States*, 350 U.S. 359, 362 (1956). Given that the grand jury is so "deeply rooted in Anglo-American history," the Supreme Court has ensured that its "historic functions continue to survive to this day" by having "[i]ts responsibilities continue to include both the determination whether there is probable cause to believe a crime has been committed and the protection of citizens against unfounded criminal prosecutions." *United States v. Calandra*, 414 U.S. 338, 342–43 (1974). Thus, contrary to Defendants' suggestion, the Supreme Court did not "simply assume" probable cause to be the standard for federal grand jury indictments. Doc. 49 at 1–2. Rather, the Supreme Court adopted that standard for a specific reason: to preserve the time-honored role of the grand jury. *See Hayes*, 408 U.S. at 686–87 (describing the "ancient role" of the grand jury in "determining if there is probable cause to believe that a crime has been committed and of protecting citizens against unfounded criminal prosecutions"). The foregoing Supreme Court jurisprudence

3

demonstrates that the probable cause standard embodies, and is not inconsistent with, the Founder's original intent.

The rules of constitutional interpretation reinforce continued respect for the probable cause standard. Notwithstanding Defendants' insistence that the Fifth Amendment's Grand Jury Clause should be interpreted as requiring a "much higher" and "more demanding" standard based solely on a handful of grand jury charges and certain commentators' opinions, Doc. 49 at 4–7, the law does not embrace such a view. The Supreme Court has "long looked to 'settled and established practice' to interpret the Constitution." *Moore v. Harper*, 600 U.S. 1, 32 (2023) (quoting *The Pocket Veto Case*, 279 U.S. 655, 689 (1929)). This is because a "regular course of practice can illuminate or liquidate our founding document's terms and phrases," *Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 474 (2022) (cleaned up), "even when the nature or longevity of that practice is subject to dispute, and even when that practice began after the founding era." *NLRB v. Noel Canning*, 573 U.S. 513, 525 (2014).

As Defendants concede, the probable cause standard for federal grand jury indictments represents "long-standing practice." Doc. 49 at 14. Indeed, some of the earliest decisions of our federal courts, including the Supreme Court, acknowledged that probable cause needed to be established for a grand jury indictment. *See, e.g.*, *Ex parte Bain*, 121 U.S. 1, 12 (1887) ("[I]t remains true that the grand jury is as valuable as ever in securing . . . individual citizens from an open and public accusation of crime, and from the trouble, expense, and anxiety of a public trial before a probable cause is established by the presentment and indictment of such a jury[.]"), *overruled on other grounds by United States v. Cotton*, 535 U.S. 625 (2002); *Hurtado v. People of State of Cal.*, 110 U.S. 516, 521 (1884) ("The right of individual citizens to be secure from an open and public accusation of crime, and from the trouble, expense, and anxiety of a public trial before

4

a probable cause is established by the presentment and indictment of a grand jury, in case of high offenses, is justly regarded as one of the securities to the innocent against hasty, malicious, and oppressive public prosecutions, and as one of the ancient immunities and privileges of English liberty."); *United States v. Smith*, 27 F. Cas. 1186, 1187 (C.C.D.N.Y. 1806) ("The object of the grand jury is only to judge whether there is probable cause for putting a party to answer a charge[.]").  There is no reason why the Court should suddenly depart from that historical practice here by becoming the first ever federal court to dismiss an indictment because the grand jury applied the probable cause standard.  Not only would doing so have far-reaching implications beyond this case, such as by calling into question the validity of all other grand jury indictments pending in this District, but it would also unnecessarily create confusion about a settled issue of law on which there is currently no uncertainty.

In sum, Defendants' challenge to the validity of the Indictment is baseless.  The grand jury was properly instructed on the probable cause standard in accordance with binding Supreme Court precedent and the centuries-old tradition of this country.  The law would have accepted nothing less and it required nothing more.  Defendants' Motion to Dismiss should therefore be denied.

## III. NO NEED FOR HEARING

The United States respectfully submits that the two pretrial motions currently pending before this Court pertain to issues that are easily resolvable by virtue of well-settled legal standards and case law.  As a result, the United States believes no oral argument is necessary regarding these two motions.

## IV.  CONCLUSION

For all of the foregoing reasons, the United States respectfully requests that the Court **DENY** Defendants' Motion to Dismiss Indictment for Based on the Court's Lack of Jurisdiction (Doc. 49).

Date:  November 9, 2023  

Respectfully submitted,

SAYLER A. FLEMING
United States Attorney


*/s/ Amy E. Sestric*
AMY E. SESTRIC, #66219MO
CORT A. VANOSTRAN, #67276MO
Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2023, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all Counsel of Record.

*/s/ Amy E. Sestric*
AMY E. SESTRIC, #66219MO
Assistant United States Attorney