UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 4:23-CR-380 |
| SONNY SAGGAR, M.D., and RENITA BARRINGER, | ) ) ) ) |
| Defendants. | ) ) |

**<u>DR. SAGGAR'S RESPONSE IN OPPOSITION
TO THE GOVERNMENT'S SECTION 3145 MOTION</u>**

Before Judge Bodenhausen, the Government argued that Dr. Saggar was a significant flight risk. Judge Bodenhausen, who had Dr. Saggar appear in front of him on multiple occasions, who reviewed all of the briefing and materials submitted by the Government, and who listened to the Government in oral argument, thoughtfully disagreed. As Magistrate Bodenhausen said at the hearing, while this is an extraordinary request, it is not unique. He has permitted other defendants to travel abroad before, and each time the defendant has returned. As Magistrate Bodenhausen also noted, "There is no reason whatsoever to believe that Defendant poses a danger to any person or to society in general. . . . The government has not demonstrated that the Security is illusory or would be beyond the reach of the Court should Defendant not return.. . . Defendant has substantial and continuing ties to the United States and the Eastern District of Missouri. . . . The government concedes that Defendant would be subject to extradition from England if he fails to return as required. . . . While there can be no guarantee that Defendant will return as promised, there is little benefit to him if he fails to keep his promise. A valuable property would be subject to forfeiture,

1

Defendant would be subject to extradition from a close ally of the United States, and Defendant would likely face additional charges and consequences upon his return." Doc. 74 at 3-4.

Judge Bodenhausen makes such decisions on almost a daily basis. Defendant respectfully suggests Judge Bodenhausen's decision should be given the consideration he has earned through his many years of evaluating bond conditions. While it is a de novo review, "the Court 'is not required to start over in every case, and proceed as if the magistrate's decision and findings did not exist.' " *United States v. Bradley*, No. 4:09-CR-644 CAS, 2009 WL 4892234, at *1 (E.D. Mo. Dec. 10, 2009) (quoting *United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990)). Instead, this "Court reviews the evidence before the Magistrate Judge and makes its own independent determination whether the findings are correct." *Id.* Notably, however, the Government does not challenge any of Judge Bodenhausen's findings of facts.

Importantly, Defendant suggests the Government is doing a disservice to both this Court and Judge Bodenhausen by presenting arguments and "evidence" never presented to Judge Bodenhausen. For instance, the Government now argues that there is pending civil litigation involving Dr. Saggar (beyond his pending divorce matter, which was raised in front of Judge Bodenhausen). Yet, no mention was made of those other matters to Judge Bodenhausen. Then, it offers this Court exhibits never presented to Judge Bodenhausen (including Exhibits 1, 2 and 15).

As discussed below, the facts as presented by the Government are inaccurate and do not match up at all with Judge Bodenhausen's findings.

**Dr. Saggar Has Not Been A Problem On Bond.**

The simplest way to disprove the Government's attempt to make it appear that Dr. Saggar has been a problem while on bond is to look at the words of the judge responsible for monitoring his bond conditions. Contrary to the Government's implication, Judge Bodenhausen said in his

Order, "Defendant has had no significant issues while on pretrial release. . . . Defendant, who has performed satisfactorily on pretrial release to date...." Doc. 74 at 3.

**Dr. Saggar's Letters To His Wife Have Been Misrepresented.**

The Government's analysis of Dr. Saggar's writings to his wife, if nothing else, is certainly offensive. First, nothing within his communications with his wife indicate he would be willing to break the law to live again in England. Moreover, quoting his expressions to his wife that he wanted to give up his material possessions does not in any way support the Government's claim that he has "a desire to forego all ties to the United States."

Probably more important, multiple times, the Government utilized half sentences to try to support its claim of a flight risk. For instance, while the Government points the Court to a statement the Dr. Saggar's friends have "vanished," *see* Doc. 76 at 9, missing is the rest of the sentence (which is blacked out, but so poorly it can all be read), which reads, "but I do thankfully have a list of friends who have stayed in my circle and call me regularly, sometimes for an hour or two at a time." Clearly, the Government did not inform this Court, or Judge Bodenhausen, of the full sentence because it directly undercuts its position. But, isn't it the Government's role to be fully candid with the Court?

The Government likewise claims that in the letter "Dr. Saggar reiterates the advantages of relocating to England" (quoting "I'm still licensed and welcome to work as an ER doc in the UK"), *see* Doc. 76 at 8, but leaves out the easily read blacked out portion of the same sentence, "but then I don't think Harry/Sonya would want to see me very much over there. So I'm crying about this and I don't know whom to turn to or what to say."). Of course, when the blacked out portion is included, England appears unappealing for the specific reason of possibly not seeing his children.

3

Equally troubling, the Government tries to explain the blackening of portions of these letters by stating, "In the interest of protecting the privacy of Dr. Saggar, his wife, and children as much as possible, the United States did not object to the redactions." Yet, looking at the very first blacked out portion identified by Defendant – "but I do thankfully have a list of friends who have stayed in my circle and call me regularly, sometimes for an hour or two at a time" – the privacy of no one is being protected by hiding that portion of the sentence. (It is also noteworthy, that the ability to read through the blackened portions was raised by Defendant, and the Government does not challenge that fact.). Privacy is not a valid explanation for supplying the Court with that partial sentence.

The Government also quotes a portion of an e-mail in which Dr. Saggar says he is willing to "give you as much child custody as you want." *See* Doc. 76 at 8. Yet, within that same e-mail under the another poorly done blacked out section, he specifically told his wife:

> I also do not want our kids to be bothered by any of this. The big spark that caused me to offer you everything was the threat from your lawyers that the kids would be put through the court system. I would rather die than allow that to happen.

Doc. 76-4. (Of course, this blacked out portion also raises no privacy issues whatsoever contrary to the Government's claim). To twist Dr. Saggar's words to make it appear he has no interest in his children while failing to disclose the "blacked out" portion is just wrong.

Then the Government takes a quote out of context to imply that Dr. Saggar might be suicidal—when in fact, within that same letter he specifically says, "I'm not suicidal." *See* Doc. 76 at 9.

As stated above, the facts are not as presented by the Government.

4

**The Collateral Is Fully Available.**

The Government also attempts to sow confusion over the availability of the collateral. First, Judge Bodenhausen obviously disagreed with the Government's version of the facts. While the Government claims the property shows Dr. Saggar cannot be trusted, it ignores the documented proof of ownership. EPCI is a legally established Delaware corporation, *see* Doc. 71-1, and Monica Saggar is the sole owner of that company, *see* Doc. 71-2. Those are documented facts.[1] Therefore, unless prohibited by an order by some court, Monica Saggar, Dr. Saggar's sister, has the power and authority to obligate the company and any of its properties. To try to claim defense counsel's statement that it was Dr. Saggar's sister's property is somehow misleading is most certainly a stretch.

The property located at 217 North 10th Street, St. Louis, Missouri is the proposed property for the bond. The Chesterfield Title Agency Letter Report, from earlier this month, *see* Doc. 71-3, shows EPCI as the legal owner, and the property having no mortgages or outstanding judgments.

Furthermore, Judge Bodenhausen found, "Defendant provided a copy of a Judgment/Order from the Circuit Court of St. Louis County, . . . [which] indicates, in substance, that if our Court deems it appropriate, the Security may be pledged in support of an order permitting Defendant to

---

[1] And, of course, even if the property (counter-factual) was owned by Dr. Saggar instead of his sister, it is still available as over one million dollars in collateral.

travel to England."[2] And, "Mr. Williams [EPCI's counsel], an attorney and officer of the court, represented that he has the authority to pledge the Security as part of Defendant's bond."[3]

### Judge Bodenhausen's Conclusion That Permitting The Travel Was In The Interest Of Justice Was Correct.

Defendant was indicted on July 26, 2023. He was arrested and arraigned the next day. While a large volume of discovery has been produced, discovery production from the Government has not yet been completed, and the Government informed defense counsel that discovery will likely not be completed until the end of December, 2023, and just last week issued new subpoenas. In other words, Dr. Saggar is being asked to patiently wait more than half a year while being saddled with all the constraints of being on bond with no more than a finding of probable cause. Dr. Saggar's ability to proceed to trial and prove his innocence is being greatly delayed.

---

[2] The Government accuses defense counsel of attempting to put up the property while it was under a protective order in St. Louis County. Defense counsel submits the Government's legal analysis of the St. Louis County court order is wrong. The Government relies upon a general standing order in the divorce proceedings based on St. Louis County Circuit Court Local Rule 68.3(2)(F)), Gov't. Ex. 11 at 2-3, asserting its applicability. Even if the Government could have believed that the above provision applied to third party EPCI, it failed to note Rule 68.3(3):
> (3) Duration. The terms of the Order shall continue in effect **until further order of the Court.** Either party may request a hearing to modify the Order by motion to the Court in the division to which the case has been assigned. (emphasis added)

The standing order only applies, if ever, "until further order of the Court." There was a further order, which is Exhibit 13 of the Government's pleading.Doc. 69-13. That Order was a Consent Order signed by all parties. It provides that "**[n]o real estate owned by EPCI that was transferred/sold to EPCI by Husband** will be further encumbered beyond the loans, mortgage, liens or notes that are currently in place without the consent of the parties or by further order of the Court." (emphasis added) Under the standing order of St. Louis County, the Consent Order – clearly a "further order of the Court" – terminates the duration of the general standing order. Yet, this prohibition consented to by EPCI explicitly only applies to real estate it acquired from Dr. Saggar.

The intended property was not owned by Dr. Saggar (or Mrs. Saggar or any entity in which they had any ownership interest) and was never transferred to EPCI by Dr. Saggar. The property was bought from "217 Partnership LLP." There is no evidence that Dr. Saggar was a part of this partnership and he was not. Therefore, it is not encumbered by the divorce proceedings. The Government even acknowledges in a footnote that it has no evidence the property was transferred to EPCI by Dr. Saggar.[2] Doc. 69 at 5.

[3] The same Judgment/Order also reflects that Defendant's sister pledged other real property to the benefit of Defendant's wife to ensure Defendant's return from England.

6

Additionally, Defendants have a pending motion to dismiss based on the court's lack of jurisdiction. In other words, there is pending a legal argument that the indictment is in fact a nullity while he is being saddled with all the constraints of being on bond. Yet, the Government filed pleadings opposing Defendants' motion to expedite a hearing on that motion.

Moreover, Dr. Saggar's mother is still alive at 93 years of age. However, statistically, she may not have that much longer to live. Dr. Saggar is very close with his mother and had been routinely traveling to visit her every few months prior to his arrest. However, his home is here in St. Louis and so are two of his three children (the oldest is away in college in England.)

Finally, one of the key foundational allegations within the Indictment is critically wrong, thus greatly diminishing the breadth of any issue of wrongdoing in this case. The entire Indictment revolves around allegations of false billings. Specifically related to billings, in Paragraph 2 of the Indictment, the grand jury alleges that the co-defendant, Ms. Barringer, was the office manager of SLGH, and "[a]s office manager of SLGH, Barringer's responsibilities included . . . billing." Then in Paragraph 35 and 36, the grand jury again claimed, "Barringer submitted all SLGH claims billed to [Medicaid and Medicare]."

But, the Government got one fact terribly wrong. For all relevant times in the Indictment, Ms. Barringer had no responsibility for submitting bills to Medicare or Medicaid, or to anyone else for that matter. Rather, SLGH had long ago engaged an outside billing service to handle all of its billing, whether to governmental agencies or private insurance companies.

The Government missed the most critical fact related to any claim of false billings, i.e., who was the biller. Had the Government pursued this very critical fact, it would have easily discovered that the outside billing service, an owner-operator entity run by Jeff Donaldson, simply misunderstood the proper method of billing APs and Dr. Ali. As Mr. Donaldson has acknowledged

7

to Dr. Saggar's counsel, Mr. Donaldson, without any bad intent, used an incorrect methodology to create the billings for work done by APs and Dr. Ali. We have been informed the Government has now become aware of these facts.

Regrettably, no federal agent or attorneys ever talked to Mr. Donaldson, Dr. Saggar or Ms. Barringer prior to obtaining its unannounced Indictment. Had such an inquiry been made, the Government could have learned that its belief that Ms. Barringer was submitting the billings for SLGH was simply wrong.

Without going into unnecessary detail, Mr. Donaldson knew who the actual provider was for every bill which was submitted. However, he mistakenly believed the APs and Dr. Ali were allowed to be billed under Dr. Saggar's NPI. That decision was not made in consultation with anyone, but rather was arrived at based on his understanding of the Medicare and Medicaid regulations.

**Dr. Saggar Offered To Waive Any Potential Opposition to Extradition.**

Defendant offered to sign a waiver of his right to contest any extradition from overseas. While the Government did not accept such offer, it clearly reflects a strong intent to return to have his day in court.

The Government has clearly attempted to muddy the waters, as it did in the court below. But, Judge Bodenhausen sifted through the Government's mud and found its opposition to a trip for Dr. Saggar to see his 93 year-old mother was without foundation. This Court should not acquiesce to the Government's offering evidence never presented to Judge Bodenhausen, offering only portions of sentences which if read in full do not support its position, and distorting the clear availability of the collateral.

Dated: December 12, 2023

Respectfully submitted,

**DOWD BENNETT LLP**

By: */s/ James G. Martin*
James G. Martin  #33586 MO
James B. Martin  #70219 MO
7676 Forsyth Blvd., Suite 1900
St. Louis, MO  63105
314/889-7300 (Telephone)
314/863-2111 (Facsimile)
jmartin@dowdbennett.com
jbmartin@dowdbennett.com

*Attorneys for Defendant Sonny Saggar, M.D.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on December 12, 2023, a copy of the foregoing was filed electronically via this Court's CM/ECF system, and therefore served on all parties of record.

/s/ *James G. Martin*
James G. Martin