UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.            ) | Case No. 4:23-CR-380 SRC (PLC) |
| ) | |
| SONNY SAGGAR, M.D., and ) | |
| RENITA BARRINGER, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' MOTION
TO DISMISS AND MEMORANDUM IN SUPPORT**

Defendants were indicted on July 26, 2023. They were arrested and arraigned the next day. As previously discussed by Defendants, one of the key foundational allegations within the Indictment is critically wrong, thus greatly diminishing the breadth of any issue of wrongdoing in this case. Specifically, in Paragraph 2 of the Indictment, the grand jury alleges (of course based on something someone told it) that Defendant Renita Ms. Barringer was the office manager of SLGH, and "[a]s office manager of SLGH, Barringer's responsibilities included . . . billing." Then in Paragraph 35 and 36, the grand jury again alleged, "Barringer submitted all SLGH claims billed to [Medicaid and Medicare]."

In the Count I conspiracy, the Indictment alleges that Defendants conspired "to make false and fraudulent representations to Medicare and Medicaid regarding healthcare services provided at SLGH in order to make money and profit," Para 26, and that Defendants "caused Medicare to be billed for services . . as if they were provided by Dr. Saggar, when in fact those services were provided by APs." Then, Counts 2 through 9 each alleges a false billing. And having reincorporated

paragraphs including 2, 35, and 36, Counts 2 through 9 thereby allege the bills were submitted by Barringer. **In other words, the entire Indictment revolves around false billings**.

But it is beyond dispute that the Government got one fact terribly wrong. For all relevant times in the Indictment, Ms. Barringer had no responsibility for submitting bills to Medicare or Medicaid, or to anyone else for that matter. Rather, SLGH had long ago engaged an outside billing service to handle all of its billing, whether to governmental agencies or private insurance companies.

The Government missed the most critical fact related to any claim of false billings, i.e., who was the biller. Had the Government pursued this very critical fact, it would have easily discovered that the outside billing service, an owner-operator entity run by Jeff Donaldson, simply misunderstood the proper method of billing APs and Dr. Ali. As Mr. Donaldson has acknowledged to Dr. Saggar's counsel, Mr. Donaldson, without any bad intent, used an incorrect methodology to create the billings for work done by APs and Dr. Ali. We understand the Government has now become aware of these facts.

In an Indictment where the charges all revolve around false billings to Medicare and Medicaid, who did the billing is a most critical fact. In Paragraphs 35 and 36, the grand jury claimed, "Barringer submitted all SLGH claims billed to [Medicaid and Medicare]." Of course, if the billings were false, and the office manager was responsible for the billings, such facts would automatically implicate her. Then when someone told the grand jury, as the Indictment alleges, that "Dr. Saggar has owned and operated" the medical facilities involved in this case (Para. 1), acts of the office manager could wrongly be understood to implicate anyone who "owned and operated" the facilities. In other words, with nothing else, allegations that the office manager

submitted the alleged false billings could wrongly be viewed as circumstantial evidence that Mr. Barringer and Dr. Saggar were participants of the alleged scheme.

On the other hand, if the true facts are that for years the Defendants utilized an outside billing service – and the Indictment is void of any allegations that the outside service intentionally submitted false billings and void of any allegations that the outside billing service was provided any misleading information regarding who provided the medical services and void of any allegation that Defendants and the outside billing service had communications which implicated a scheme to submit false bills – then a grand jury might readily conclude that there was not a crime.

## **Legal Standard**

The Supreme Court has made clear that this court's supervisory power can be used to dismiss an indictment because of certain conduct occurring before the grand jury. *Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988). Dismissal of the indictment can be appropriate "if it is established that the violation substantially influenced the grand jury's decision to indict or if there is grave doubt that the decision to indict was free from the substantial influence of such violations." As set out above, this one critical misrepresentation to the grand jury, *at a minimum*, creates "grave doubt that the decision to indict was free from the substantial influence of such violations." *Id.* "When the alleged prosecutorial misconduct occurs in the context of a grand jury proceeding, we dismiss the indictment only when the misconduct 'substantially influenced the grand jury's decision to indict' **or** when there is 'grave doubt that the decision to indict was free from the substantial influence of such violations.'" *United States v. Goldstein*, 989 F.3d 1178, 1204 (11th Cir. 2021) (emphasis added).

Dismissal is most justified where the misrepresentation amounts to a violation of one of those "few, clear rules which were carefully drafted and approved by this Court and by Congress to

ensure the integrity of the grand jury's functions." *United States v. Mechanik*, 475 U.S. 66, 74 (1986) (O'Connor, J., concurring in judgment). False testimony before the grand jury is one such category of misconduct. *United States v. Vallie,* 284 F.3d 917, 921 (8th Cir. 2001) ("An indictment cannot be based on perjured testimony"); *United States v. Cox,* 896 F.2d 1368 (4th Cir. 1989) ("When other evidence is sufficient to return an indictment valid on its face, the indictment will not be dismissed, **unless** there is perjury **or** actual prejudice to the defendants.") (emphasis added).

In evaluating the particular facts of this case and whether "grave doubt [exist] that the decision to indict was free from the substantial influence of such violations," Defendants respectfully note that consideration must be given to Defendants previously filed motion to dismiss for lack of jurisdiction. If the proper standard of proof is higher than probable cause, then misinformation provided to the grand jury is more impactful, because more evidence is required to meet the higher standard.

## Argument

Regrettably, no federal agent or government attorneys ever talked to Mr. Donaldson, Dr. Saggar or Ms. Barringer prior to obtaining its unannounced Indictment. Had such an inquiry been made, the Government could have learned that its belief that Ms. Barringer was submitting the billings for SLGH was simply wrong. This would appear to be, at a minimum, gross negligence in conducting the investigation and presenting information to the grand jury.

Defendants believe that the Government will readily acknowledge this flaw in the Indictment (and though raised in other pleadings, it has never refuted it). The case is all about alleged false billings, yet a subpoena for Mr. Donaldson's billing records was never issued until after the Indictment. The question before the Court therefore is very straightforward – did telling

the grand jury that Ms. Barringer submitted the alleged false billings create sufficient doubt that the decision to indict was free from the substantial influence of such false information. If so, clearly Defendants were thereby prejudiced. *See United States v. McCallister*, 2022 WL 1619029, at *3 (4th Cir. May 23, 2022) ("A district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendant.").

While it may seem one false allegation out of a multi-page Indictment would not substantially impact the grand jury's decision-making, the problem here is the false allegation goes to the heart of whether these two Defendants participated in a scheme to submit false billings. One can review the Indictment and see that the allegation that Ms. Barringer submitted all the billing is the very crux of any circumstantial evidence that she and Dr. Saggar knowingly submitted false bills.

It is not a question whether the Government believes it has other evidence that might implicate either of the Defendants, the question is whether telling the grand jury such misinformation regarding who did the billings would create sufficient doubt that the decision to indict was free from the substantial influence of such misinformation.

The Indictment contains no allegations containing circumstantial evidence that Ms. Barringer participated in false billings. Rather, the allegations are very direct – she was the biller. But, in reality, she was not the biller. So, the only evidence alleged in the Indictment implicating Ms. Barringer is completely false. Thus, how could that not create sufficient doubt that the decision to indict was free from the substantial influence of such misinformation.

Similarly, the Indictment contains no allegations that Ms. Barringer or Dr. Saggar had any improper communications with Mr. Donaldson – the actual biller. The absence of any allegation of a connection between Donaldson and the two Defendants (of course being the result that the

Government had never heard of Donaldson) means the only information the grand jury got about who knew anything about how the billings were done, was false. Thus, again, how could that not create sufficient doubt that the decision to indict was free from the substantial influence of such misinformation.

There can be no dispute that Mr. Donaldson, an outside service, did the billings –not Ms. Barringer. There likewise can be no dispute that someone told the grand jury that she was responsible for the billings. The only reason to tell the grand jury that incorrect "fact" would be to suggest that she therefore knew the billings were false and consequently, so did Dr. Saggar. The question should not be did such misinformation create sufficient doubt that the decision to indict was free from the substantial influence of the misinformation, but rather, how could it have not substantially influenced the grand jury's decision?

Dated:  January 2, 2024                    Respectfully submitted,

                                                        **DOWD BENNETT LLP**

                                                       By:  */s/ James G. Martin*
                                                           James G. Martin  #33586 MO
                                                           James B. Martin  #70219 MO
                                                           7676 Forsyth Blvd., Suite 1900
                                                           St. Louis, MO  63105
                                                           314-889-7300 (Telephone)
                                                           314-863-2111 (Facsimile)
                                                           jmartin@dowdbennett.com
                                                           jbmartin@dowdbennett.com

                                                           *Attorneys for Defendant Sonny Saggar, M.D.*

/s/ William J. Ekiss
William J. Ekiss (#47389)
5770 Mexico Rd., Ste A
St. Peters, MO 63376
636-317-6331 (Telephone)
Email: billekiss@lampinlaw.com

*Attorneys for Defendant Renita Barringer*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on January 2, 2024, a copy of the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system on all counsel of record.

/s/ James G. Martin