UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 4:23-CR-00380-SRC-PLC |
| | ) | |
| v. | ) | |
| | ) | |
| SONNY SAGGAR, M.D., and | ) | |
| RENITA BARRINGER, | ) | |
| | ) | |
| Defendants. | ) | |

**UNITED STATES OF AMERICA'S RESPONSE TO DEFENDANTS'
OBJECTIONS TO THE REPORT AND RECOMMENDATION REGARDING
DEFENDANTS' MOTION TO STRIKE PORTIONS OF THE INDICTMENT**

COMES NOW the United States of America, by and through its attorneys, Sayler A.
Fleming, United States Attorney for the Eastern District of Missouri, and Amy E. Sestric and Cort
A. VanOstran, Assistant United States Attorneys for said District, and responds to Defendants'
Objections to the Report and Recommendation Regarding Defendants' Motion to Strike Portions
of the Indictment (ECF No. 83):

**BACKGROUND**

On July 26, 2023, a federal grand jury charged defendants Sonny Saggar, M.D. (Defendant
Saggar), and Renita Barringer (Defendant Barringer) with one count of conspiracy (in violation of
18 U.S.C. § 371) and eight counts of making false statements related to health care matters (in
violation of 18 U.S.C. §§ 1035 and 2). Specifically, the Indictment (ECF No. 1) charges Defendant
Saggar, a medical doctor, and Defendant Barringer, his office manager, with fraudulently billing
Medicare and Missouri Medicaid for claims for services arising out of their Creve Coeur and
downtown St. Louis urgent care facilities. (Indictment, ECF No. 1 ¶¶ 1-2, 29, 37, 42.) The
Indictment alleges that Defendant Saggar and Defendant Barringer (together, Defendants) hired

"assistant physicians" or "APs"—*i.e.* medical school graduates who have not completed a residency program—and then billed for those APs' services as if Defendant Saggar himself had performed them, even when Defendant Saggar was out of town. (Indictment, ECF No. 1 ¶¶ 4, 29, 37.)

The Indictment further alleges that Medicare does not pay for services conducted by APs at all, and that Missouri Medicaid only pays for services conducted by APs under certain conditions that Defendants knowingly failed to meet. (Indictment, ECF No. 1 ¶¶ 17, 22, 31-35.) Specifically, along with being licensed by the Missouri Board of Registration for the Healing Arts (MBRHA), APs whose services are billed to Medicaid must be supervised by a physician pursuant to a "collaborative practice arrangement," or "CPA," under Missouri law. (Indictment, ECF No. 1 ¶¶ 22.) Under Missouri law, CPAs must, among other things, be in writing and limit the AP to providing only primary care services and only in medically underserved rural or urban areas in Missouri.[1] (Indictment, ECF No. 1 ¶¶ 6-7.)

Additionally, special rules apply when an AP practices under a CPA at a location when the supervising, or "collaborating," physician is not "continuously present." (Indictment, ECF No. 1 ¶ 10 (citing Mo. Rev. Stat. § 334.037.7).) Before an AP may practice under a CPA at such a location, the collaborating physician must "determine and document the completion of at least a one-month period of time during which the [AP] shall practice with the collaborating physician continuously present . . . ." (Indictment, ECF No. 1 ¶ 10 (citing Mo. Rev. Stat. § 334.037.7, 20 C.S.R. § 2150-2.240(1)(C)).) Under Missouri regulation, "continuously present" means that the

---

[1] Though not relevant to this case, during the relevant timeframe, CPAs could also limit APs to providing primary care services in any pilot areas established in which APs could practice. Mo. Rev. Stat. § 334.036.2(1).

collaborating "physician is physically present and seeing each and every patient with the [AP] when said [AP] is seeing and/or treating a patient," and a "one (1) month period" means "a minimum of one hundred twenty (120) hours of clinic time, where the supervising physician and [AP] are seeing and treating patients." (Indictment, ECF No. 1 ¶ 10 (citing 20 C.S.R. § 2150-2.240(1)(D)).)

The Indictment alleges that Defendants caused Medicaid to be billed for services conducted by APs even though (1) no CPAs existed between the APs and the purported collaborating physicians; (2) the Creve Coeur location of Defendants' urgent care facility was not a medically underserved rural or urban area; and (3) the APs saw patients on their own, even though they had not received 120 hours of clinic time during which the collaborating physicians were continuously present. (Indictment, ECF No. 1 ¶¶ 31–34.)

On September 20, 2023, Defendants filed their Motion to Strike Portions of the Indictment (ECF No. 47) (Motion to Strike). In their Motion, Defendants asked the Court to strike two paragraphs of the Indictment that refer to the Missouri regulation defining "continuously present," 20 C.S.R. § 2150-2.240(1)(D). On December 20, 2023, the Magistrate Judge recommended that the Motion to Strike be denied. (Report & Recommendation (R&R) (ECF No. 80).) For reasons set forth below, the Court should adopt the R&R and deny Defendants' Motion to Strike.

## LEGAL STANDARD

Pursuant to 28 U.S.C. § 636(b)(1), the R&R recommending denial of the Motion to Strike is subject to *de novo* review of the portions to which objection is made. In turn, motions to strike surplusage from an indictment or information are governed by Federal Rule of Criminal Procedure 7(d). The Eighth Circuit has held that such a motion should only be granted "where it is clear that

the allegations contained therein are not relevant to the charge made or contain inflammatory and prejudicial matter." *United States v. Michel-Galaviz*, 415 F.3d 946, 947-48 (8th Cir. 2005) (citing *Dranow v. United States*, 307 F.2d 545, 558 (8th Cir. 1962)). "Legally relevant information is not surplusage. Consequently, due to this exacting standard, motions to strike information as surplusage are rarely granted." *United States v. Haning*, 2019 WL 9834329, at *14 (E.D. Mo. Aug. 20, 2019) (citing *United States v. Bucey*, 691 F. Supp. 1077, 1081 (N.D. Ill. 1988)). Indeed, "if the language in the indictment is information which the government hopes to properly prove at trial, it cannot be considered surplusage no matter how prejudicial it may be." *Id.*

## ARGUMENT

In their objections to the R&R, Defendants largely reiterate the same arguments they raised before the Magistrate Judge. Specifically, Defendants contend that two paragraphs of the Indictment—paragraphs 10 and 32—should be stricken because they reference 20 C.S.R. § 2150-2.240(1)(D), the Missouri regulation defining the term "continuously present." Defendants contend that the MBRHA exceeded its authority in promulgating 20 C.S.R. § 2150-2.240(1)(D) and that, as a result, 20 C.S.R. § 2150-2.240(1)(D) can have no conceivable relevance to this case. Defendants' Motion to Strike should be denied because (1) as the Magistrate Judge properly found, "Defendants failed to demonstrate that the validity of a regulation is an appropriate basis for a determination of surplusage within the meaning of Rule 7(d)," (R&R, ECF No. 80, at 7); (2) the relevance of 20 C.S.R. § 2150-2.240(1)(D) to this federal case is unrelated to its validity under state law; and (3) in any event, 20 C.S.R. § 2150-2.240(1)(D) is valid under state law.

1.      **The Validity of a Regulation Is Not an Appropriate Basis for a Motion to Strike Surplusage.**

Defendants argue that paragraphs 10 and 32 of the Indictment should be stricken, because, they say, 20 C.S.R. § 2150-2.240(1)(D) is invalid.   Defendants contend that the MBRHA overstepped its delegated authority in promulgating 20 C.S.R. § 2150-2.240(1)(D), which defines "continuously present" as requiring the collaborating physician to be "physically present and seeing each and every patient with the [AP] when said [AP] is seeing and/or treating a patient." Defendants conclude that an allegedly invalid regulation can have no relevance to an indictment under any circumstances, and thus references to it must be stricken.

As the Magistrate Judge noted, "Defendants cite no authority for the proposition that a Rule 7(d) motion requires the Court to determine the validity of regulations referenced in an indictment."  (R&R, ECF No. 80, at 5.)  In the two cases Defendants cite that consider the validity of a statutory and regulatory scheme, the district courts addressed motions to dismiss, not motions to strike.  (*Id.* at 6–7.)  Nonetheless, in their objections, Defendants hypothesize, "But, certainly, a challenged regulation that would justify dismissal, would at a minimum justify striking the flawed allegations."   (Defs.' Objs. to R&R Regarding Defs.' Mot. to Strike, ECF No. 83, at 4.) Defendants' point mistakenly assumes that the challenged regulation would, in fact, justify dismissal.  In reality, the regulation at issue is just one of a multitude that were violated by Defendants, and even if it were found to be invalid, the Indictment would stand.  Moreover, there is no prejudice arising from the inclusion of paragraphs 10 and 32; "simply describing certain statutory and regulatory requirements and alleging that Defendants failed to comply with those requirements cannot be described as inflammatory or prejudicial within the meaning of Rule 7(d)." (R&R, ECF No. 80, at 9.)

5

Simply put, there is no legal basis on which to strike paragraph 10 and 32, and Defendants' Motion to Strike should be denied.

**2.      The Relevance of 20 C.S.R. § 2150-2.240(1)(D) to This Federal Health Care Fraud Case Has Nothing to Do with Its Validity Under State Law.**

Defendants' argument is flawed for another reason:  it misconstrues the charges in the Indictment.   Defendants are not being criminally charged for violating 20 C.S.R. § 2150-2.240(1)(D).  Rather, they are being charged under 18 U.S.C. § 1035 for fraudulently billing claims to federal health care benefit programs, including Medicaid, which, as the Indictment alleges, "pays for certain types of primary care-related services provided by an AP *if* . . . the AP has a CPA in writing with a licensed physician *as required by Mo. Rev. Stat. § 334.037* . . . ."  (Indictment, ECF No. 1 ¶ 22 (emphasis added).)

Critically, § 334.037 provides that "[t]he collaborating physician shall determine and document the completion of at least a one-month period of time during which the [AP] shall practice *with the collaborating physician continuously present* before practicing in a setting where the collaborating physician is not continuously present."  Mo. Rev. Stat. § 334.037.7 (emphasis added).  In turn, the regulation at issue, 20 C.S.R. § 2150-2.240(1)(D), interprets § 334.037.7 by defining "continuously present."   As the Indictment alleges, Missouri Medicaid required compliance with these provisions as a condition of payment of claims for services conducted by APs.  (Indictment, ECF No. 1 ¶ 22.)

At trial, the United States will present evidence that Defendants' compliance with § 334.037 and its promulgating regulations was material to Missouri Medicaid's decision to reimburse claims for payment for services conducted by APs, and that, had Missouri Medicaid known that Defendants had violated these provisions, it would not have paid the claims submitted

for services conducted by APs.  In other words, even if 20 C.S.R. § 2150-2.240(1)(D) were invalid under state law, Medicaid was still entitled to rely on compliance with it as a condition of payment. Thus, the Court need not reach the issue of 20 C.S.R. § 2150-2.240(1)(D)'s validity, because its relevance to the federal criminal charges at issue in this case is unrelated to whether it was properly promulgated (which it was, as explained below).  *See Haning*, 2019 WL 9834329, at *14 (holding that information in the indictment which government "hopes to properly prove at trial" cannot be considered surplusage).  Instead, its relevance goes directly to an element of the offense: materiality of the misrepresentation to Medicaid.

### 3.    The MBRHA Properly Exercised Its Delegated Authority to Promulgate 20 C.S.R. § 2150-2.240(1)(D), A Valid Regulation Under Missouri Law.

For the above reasons, the Court need not address Defendants' contention that 20 C.S.R. § 2150-2.240(1)(D) is invalid.  Even if the Court were to reach the matter of validity, however, it could easily deny Defendants' Motion on that basis as well.

In Missouri, administrative regulations "are entitled to a presumption of validity and may 'not be overruled except for weighty reasons.'"  *State ex rel. Mo. Pub. Defender Com'n v. Waters*, 370 S.W.3d 592, 602 (Mo. 2012) (quoting *Foremost-McKesson, Inc. v. Davis*, 488 S.W.2d 193, 197 (Mo. 1972) (en banc)).  "Administrative rules and regulations are valid unless they are unreasonable and plainly inconsistent with the authorizing statute."  *Mercy Hosps. East Communities v. Mo. Health Facs. Review Committee*, 362 S.W.3d 415, 417 (Mo. 2012).  They should further "be reviewed in light of the evil they seek to cure and are not unreasonable merely because they are burdensome."  *Waters*, 370 S.W.3d at 602 (quoting *Foremost-McKesson*, 488 S.W.3d at 197–98).

Defendants contend that 20 C.S.R. § 2150-2.240(1)(D) conflicts with Mo. Rev. Stat. § 334.037.7, which reads in relevant part:

> The collaborating physician shall determine and document the completion of at least a one-month period of time during which the assistant physician shall practice with the collaborating physician continuously present before practicing in a setting where the collaborating physician is not continuously present.

Defendants argue that 20 C.S.R. § 2150-2.240(1)(D) attempts to modify or expand § 334.037.7 to the extent it defines "continuously present" as requiring the collaborating physician to be "physically present and seeing each and every patient with the [AP] when said [AP] is seeing and/or treating a patient." As a result, Defendants conclude 20 C.S.R. § 2150-2.240(1)(D) violates Missouri's prohibition against regulations that are in conflict with state law. *See* Mo. Rev. Stat. § 536.014(2).

Defendants' argument is flawed because (1) 20 C.S.R. § 2150-2.240(1)(D) is reasonable and consistent with the plain and ordinary meaning of § 334.037.7; and (2) in promulgating 20 C.S.R. § 2150-2.240(1)(D), the MBRHA acted squarely within the scope of its expressly delegated authority.

### a. The Plain and Ordinary Meaning of § 334.037.7 Is Consistent with 20 C.S.R. § 2150-2.240(1)(D).

Defendants concede that the "ordinary meaning" of the phrase "'continuously present' makes . . . reference to 'location.'" (Defs.' Objs. to R&R Regarding Defs.' Mot. to Strike, ECF No. 83, at 6.) However, they claim the regulation goes too far when it requires the collaborating physician to be in the same room as the AP. This assertion is not only unsupported; it is wrong.

In Missouri, "[a] regulation is valid 'unless unreasonable and plainly inconsistent' with the statute under which the regulation was promulgated." *Linton v. Mo. Veterinary Med. Bd.*, 988

8

S.W.2d 513, 517 (Mo. 1999) (quoting *Foremost-McKesson*, 488 S.W.2d at 197) (holding valid a regulation prohibiting veterinary license applicant from taking examination more than three times in or out of the state, because it did not plainly conflict with statute giving veterinary board sole discretion to decide whether to accept an out-of-state score); *see also Massage Therapy Training Institute, LLC v. Mo. State Bd. of Therapeutic Massage*, 65 S.W.3d 601, 607 (Mo. App. S.D. 2002) (regulation did not conflict with state statute and was therefore valid).  According to Webster's Third New International Dictionary—the same authority that the Missouri Supreme Court has used to interpret statutes[2]—"continuous" is "characterized by uninterrupted extension in space," as well as "characterized by uninterrupted extension in time or sequence."  Webster's New Int'l Dictionary at 493-94 (3d ed. 2002).  A definition of "present" is "now being in view, being dealt with, or being under consideration."  *Id.* at 1793.

Accordingly, the notion that 20 C.S.R. § 2150-2.240(1)(D) requires a collaborating physician to be physically present with the AP while seeing patients is consistent with generally accepted definitions of "continuously present."  Far from being "plainly *in*consistent," 20 C.S.R. § 2150-2.240(1)(D) is *consistent* with the plain and ordinary meaning of § 334.037.7.

---

[2] *See, e.g., Dubuc v. Treasurer of State*, 659 S.W.3d 596, 603–04 (Mo. 2023) (referencing Webster's Third New International Dictionary definition of "documented," because "medically documented" was a term not defined by workers' compensation statutes); *State ex rel. Richardson v. Green*, 465 S.W.3d 60, 64 (Mo. 2015) (relying on Webster's Third New International Dictionary to define "violence" because no definition was contained in the statute at issue:  Mo. Rev. Stat. § 558.046); *United Pharmacal Co. of Mo., Inc. v. Mo. Bd. of Pharm.*, 208 S.W.3d 907, 911 (Mo. 2006) (citing Webster's Third New International Dictionary for the definition of "drug" because it was "not defined in the statute" at issue).

**b.    The MBHRA Acted Within the Scope of Its Expressly Delegated Authority in Promulgating 20 C.S.R. § 2150-2.240(1)(D).**

In various places, Defendants' Objections to the R&R accuse the MBHRA of overstepping its "delegated authority" in promulgating 20 C.S.R. § 2150-2.240(1)(D).  (Defs.' Objs. to R&R Regarding Defs.' Mot. to Strike, ECF No. 83, at 2, 10, 11.)  Tellingly, however, nowhere does the Motion to Strike discuss the relevant authority expressly delegated by the legislature to the MBRHA.

The legislature broadly granted the MBRHA authority to establish "rules [relating to APs] . . . establishing licensure and renewal procedures, supervision, collaborative practice arrangements, fees, and addressing such other matters as are necessary to protect the public and discipline the profession."  Mo. Rev. Stat. § 334.036.3(1).  More specifically, § 334.037.3 directs the MBRHA to "promulgate rules regulating the use of collaborative practice arrangements for" APs.  As part of this directive, the MBRHA is required to consult "with deans of medical schools and primary care residency program directors in the state" to make rules specifying:

> the development and implementation of educational methods and programs undertaken during the collaborative practice service which shall facilitate the advancement of the [AP's] medical knowledge and capabilities, and which may lead to credit toward a future residency program for programs that deem such documented educational achievements acceptable[.]

Mo. Rev. Stat. § 334.037.3(3).  The legislature further directed the MBRHA to make rules regarding the "requirements for review of services provided under collaborative practice arrangements, including delegated authority to prescribe controlled substances."  Mo. Rev. Stat. § 334.037.3(4).

Thus, MBRHA's requirement for APs to train side-by-side with collaborating physicians for the first 120 hours of their practice falls squarely within its delegated authority to regulate the

"supervision" of APs, their CPAs, the "review" of their services provided under CPAs, and "such other matters as are necessary to protect the public."  Mo. Rev. Stat. § 334.036.3(1).  It also falls under the MBHRA's duty to consult with medical professionals—a directive that clearly requires a collaborative and detailed approach to establishing AP training and public safety guidelines—to make rules regarding "educational methods" for APs that "facilitate the advancement" of their "medical knowledge and capabilities."

Based on the Missouri legislature's delegation of authority to another agency, the Missouri State Board of Therapeutic Massage (BTM), the Missouri Court of Appeals rejected a challenge to a regulation much like the challenge Defendants lodge here.  In *Massage Therapy Training Institute, LLC v. BTM*, the plaintiffs were massage therapy schools that contested a BTM regulation requiring an applicant for a massage therapy license to submit a transcript showing completion of a massage therapy program taught by instructors who met a variety of extremely specific criteria. 65 S.W.3d 601, 604–05 (Mo. App. S.D. 2002).  Like Defendants here, the plaintiffs argued that the regulation exceeded the scope of the MTB's delegated authority, because nothing in the statutes upon which the regulation was premised discussed massage schools or the various requirements for instructors that the regulation imposed.  *Id.* at 605–06.

The Missouri Court of Appeals disagreed, concluding that, in delegating authority to regulate "educational requirements" and the completion of a "course of instruction approved by the" MTB, the legislature gave the MTB authority to regulate "the *quality* of instruction, which would logically include minimum educational and experience requirements for the course instructors."  *Id.* at 605, 607 (emphasis in original).  The court added that the state had legitimate

interests in "protecting its citizens from an incompetent health care provider (including massage therapists)" and "in establishing a high level of competence for massage therapists." *Id.* at 607.

The same rationale applies here. In directing the MBRHA to consult with medical professionals, and in delegating authority to the MBRHA to regulate "educational methods" and "supervision" of APs, the legislature clearly intended to allow the MBRHA to oversee training requirements for APs prior to their ability to operate without a supervising physician at their side— an obvious exercise of the state's legitimate interest in "protecting its citizens from an incompetent health care provider." *Id.* at 607. Because 20 C.S.R. § 2150-2.240(1)(D) plainly falls within the scope of the MBRHA's delegated authority, Defendants' Motion to Strike should be denied.[3]

---

[3] Defendants' remaining arguments lack merit. Defendants contend that, because unrelated regulations pertaining to nurse practitioners and physician assistants (as opposed to assistant physicians, the practitioners relevant to the present case) do not define "continuously present," 20 C.S.R. § 2150-2.240(1)(D) should be void. Defendants do not—and cannot—explain how these separate regulatory regimes have any bearing on the plain language of 20 C.S.R. § 2150-2.240(1)(D), which does clearly define "continuously present," and its authorizing statutes.

Nor is Defendants' reference to *MBRHA v. Smith*, a 2004 administrative hearing commission decision, on point. No. 03-1609 HA, 2004 WL 1636511 (June 10, 2004). That case questioned whether a physician had violated a regulation requiring him to him practice "in the same location" as the nurse practitioner prior to her practicing without the physician continuously present. Critically, unlike 20 C.S.R. § 2150-2.240(1)(D), the regulation in *Smith* did *not* require the physician to be "continuously present" *prior* to the nurse practitioner practicing on her own; it merely required the physician to be at the "same location." 2004 WL 1636511 at *5.

## <u>CONCLUSION</u>

WHEREFORE, the United States respectfully requests that the Court adopt the Report and Recommendation of the United States Magistrate Judge (ECF No. 80) and **DENY** Defendants' Motion to Strike Portions of the Indictment (ECF No. 47) in its entirety.

Date:   January 16, 2024                    Respectfully submitted,

SAYLER A. FLEMING
United States Attorney


*/s/ Amy E. Sestric*
AMY E. SESTRIC, #66219MO
CORT A. VANOSTRAN, #67276MO
Assistant United States Attorneys

13

## CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2024, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all Counsel of Record.

*/s/ Amy E. Sestric*
AMY E. SESTRIC, #66219MO
Assistant United States Attorney

14